# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BART M. PITCHER,<br><br>    Defendant. | Case No. 4:CR 08-344-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to suppress filed by defendant Pitcher. The Court held an evidentiary hearing on the motion on January 18, 2010, and took the motion under advisement. For the reasons expressed below, the Court will deny the motion.

## FACTUAL BACKGROUND

Defendant Pitcher is charged along with seven co-defendants with (1) conspiracy to possess with intent to distribute methamphetamine, and (2) conspiracy to launder the proceeds of that drug trafficking. Prior to being charged, Pitcher made statements to detectives with the Idaho State Police (ISP) that he now seeks to suppress.

On April 28, 2009, Pitcher's co-defendant, Douglas Dalton was arrested following a drug deal and car chase with the police. The car Dalton was driving belonged to Pitcher. The ISP

took Pitcher's car to their facility where it was searched. The next day, April 29th, Pitcher called ISP Sergeant John Kempf to ask about his car. Sgt. Kempf told him that he needed to retrieve the car that same day or it would be impounded.

Pitcher and Jackie Pierce, arrived at the ISP offices at about 5:00 p.m. on April 29, 2009. He spoke with an administrative assistant who alerted Sgt. Kempf that Pitcher had arrived. Sgt. Kempf walked over to Detective Skinner – the lead case agent investigating Pitcher for drug dealing – and asked if they should speak with Pitcher now. Detective Skinner agreed, and the two officers entered the interview room. Sgt. Kempf opened a door leading from the interview room into a public hallway. Finding Pitcher there, Sgt. Kempf asked him if the officers could ask him a few questions. Pitcher agreed and entered the interview room with Sgt. Kempf and Detective Skinner. Pierce waited on a bench in the hallway outside the interview room.

The interview began with Sgt. Kempf explaining to Pitcher why the ISP had seized his car, that he knew Pitcher was involved with others who were recently arrested for dealing methamphetamine, and that he wanted to get Pitcher's side of the story. Pitcher responded that he had wanted to talk, and get it off his chest. However, Pitcher expressed concern that Pierce, waiting in the hallway, could overhear them, and he did not want her to overhear his statements. When the officers confirmed that the walls were thin, Pitcher said he needed to make arrangements for her to leave. Detective Skinner opened the door to the hallway, and pointed the way out of the building. Pitcher then left with Pierce and returned by himself to the interview room about fifteen minutes later.

The interview room was small, perhaps 12 feet long by 8 feet wide. While the doors were closed during the questioning, they were never locked. Pitcher was seated closest to the

**Memorandum Decision & Order - 2**

door leading to the public hallway. The other two officers were seated further away from the door and did not block it at any time.

Sgt. Kempf began by reminding the defendant that he was not under arrest, and was free to go at any time. Sgt. Kempf explained to Pitcher that although the detectives could not make any promises of leniency if he cooperated, his early cooperation would likely be taken into consideration. Sgt. Kempf also told Pitcher that, although he was under investigation, it was not their intention to arrest him that evening, regardless of whether he talked to them. They were simply allowing him the opportunity to cooperate early on in their investigation. Pitcher indicated that he wished to proceed.

The interview lasted about 90-105 minutes (from 5:15 or 5:30 p.m. to 7:00 p.m.). Pitcher was very forthcoming with information. The officers asked few questions, and spent most of their time in the interview listening to Pitcher's answers. At no time were the officers hostile, aggressive or confrontational.

After the questioning, as Pitcher was driving home, he called Detective Skinner from his cell phone, and told Detective Skinner that he had minimize the drug quantities he had referred to during the interview. A few days later, he called again to convey additional information.

A dramatically different account of the interview is given by Pitcher and Pierce. Both testified about the interrogation itself; Pierce testified that she was able to overhear everything said during the first 90 minutes of the interrogation from where she was seated in the hallway just outside the door. According to their testimony, Pitcher (1) was ordered, not invited, into the interview room; (2) never left the interview room for two-and-a-half hours; (3) was subjected to aggressive questioning that eventually exhausted him to the point of saying whatever the officers

**Memorandum Decision & Order - 3**

wanted; (4) was never advised that he was free to go or that he was not under arrest; and (5) was told by officers that they had a warrant, which he assumed was for his arrest.

The clear and direct conflict between the police officer's testimony and that of Pitcher and Pierce requires the Court to make a credibility determination. The Court finds the officers' version of the interview to be far more believable. Pitcher has a clear interest in the outcome of the hearing and, thus, had a motivation to slant his testimony so as to make it appear that he was in effectively in custody and that his statements to the detectives was not voluntary.

The Court accords less weight to Pierce's testimony because of her past relationship with Pitcher and because her testimony was internally inconsistent and was contradicted by the testimony of her probation officer. Pierce initially suggested that she was only a friend of Pitchers, and did so in a way that was suggestive that the friendship was not particularly close. However, it was later established that the two had been romantically involved, and that Pitcher had loaned her a car for her exclusive use for two years ending in 2008. Moreover, Pitcher had paid her fines of $1,600 and had sold methamphetamine to her as recently as 2006.

Pierce initially testified that she has had no involvement with methamphetamine since 2004, but later admitted that she relapsed in 2006. She also testified that she had never received methamphetamine from Pitcher, and denied telling her probation officer that the meth she used during her relapse came from Pitcher. But this was directly contradicted by her probation officer who testified that Pierce admitted during a probation interview in April, 2006 that she was back using and dealing drugs and that Pitcher had supplied her with one half ounce of methamphetamine. Pierce corroborated her statement by (1) providing her probation officer with her drug ledgers and (2) showing her probation officer where she kept her stash. This

**Memorandum Decision & Order - 4**

potential for bias, coupled with internal inconsistencies and contradictions by her probation officer, raises serious questions about Pierce's credibility.

Accordingly, the Court finds the most credible account of the interview comes from the testimony of Sgt. Kempf and Detectives Skinner and Olson, as set forth in the Court's findings above.

## ANALYSIS

Pitcher claims that during this questioning, he was in custody and entitled to a *Miranda* warning. Even if not in custody, he argues, his statements to the detectives were not voluntary and hence must be suppressed.

## **Custody**

Before interrogating a suspect, police officers generally must give the four warnings that *Miranda* requires. But that obligation applies only if the individual was "in custody." *U.S. v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009).

To determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide "whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* The court must "examine the totality of the circumstances surrounding the interrogation." *Id.* A defendant is in custody if a "reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *Id.* The custody determination is objective and is not based upon "the subjective views of the officers or the individual being questioned." *Id.*

The Circuit has identified five factors relevant to the custody determination: "(1) the

**Memorandum Decision & Order - 5**

language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* These considerations are not exhaustive; "[o]ther factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *Id*. at 884. Guided by these factors, the Court turns to the circumstances surrounding Pitcher's interrogation.[1]

Beginning with the first factor – the language used to summon the defendant – the Court finds that the defendant traveled to the ISP offices voluntarily to retrieve his car. Once there, he was invited to answer questions and he voluntarily agreed to do so. When a defendant agrees to accompany officers to an interrogation room, this factor weighs against a finding that the defendant is in custody. *U.S. v. Crawford*, 372 F.3d 1048, 1059 (9th Cir.2004) (en banc). That is the case here, and this factor accordingly weighs against a finding of custody.

The Court turns to the second factor, "the extent to which the defendant was confronted with evidence of guilt." *Bassignani*, 575 F.3d at 883. Here, the officers did tell Pitcher that they suspected he was involved in drug trafficking. This factor weighs in favor of a finding of custody.

The third factor examines the physical surroundings of the interrogation. Here, the interrogation occurred at the ISP offices in a small room. While two officers were with Pitcher

---

[1] In the original *Bassignani* decision, the Circuit confronted for the first time the issue of who has the burden of proof on the custody issue, and held that the defendant had the burden of proving that he was in custody. *See U.S. v. Bassignani*, 560 F.3d 989 (9th Cir.), *opinion amended and superseded,* 575 F.3d 879 (9th Cir. 2009). However, in the amended opinion, this holding was withdrawn. No case since has taken up the issue. The Court will accordingly place the burden on the Government to show that the defendant was not in custody.

**Memorandum Decision & Order - 6**

in that room, he was seated next to the door that was not locked or blocked in any manner. The Court finds that this factor is neutral in the custody determination.

Turning to the fourth factor, the duration of the detention, the questioning lasted for about 90 minutes. In past cases, this factor did not weigh in favor of custody for detentions lasting "more than one hour," *Crawford*, 372 F.3d at 1052, and "approximately 45 minutes." *U.S. v. Norris,* 428 F.3d 907, 912 (9th Cir.2005). In another case, however, a detention of 45 to 90 minutes did weigh in favor of custody. *U.S. v. Kim*, 292 F.3d 969, 977 (9th Cir.2002). Finally, in *Bassignani*, the Circuit found that a two-and-a-half hour detention weighs in favor of custody, but they accorded "less weight to this factor" because the questioning was not a "marathon session designed to force a confession." *Bassignani*, 575 F.3d at 886 (quoting *Davis v. Allsbrooks*, 778 F.2d 168, 171(4th Cir.1985)). In light of these case authorities, the Court finds that 90 minutes of interrogation might favor a finding of custody, but the Court will, like *Bassignani*, assign less weight because the questioning clearly was not a marathon session designed to force a confession but was largely taken up with Pitcher's answers and responses.

The final factor is the degree of pressure used to detain the defendant. Under the facts of *Bassignani,* the Circuit held that this factor weighed against a finding of custody when the questioning was "open and friendly" and the defendant "participated actively," *id*. at 884, even though there was "one brief confrontational moment in the questioning." *Id*. at 885 n. 7. But where the interrogator "adopts an aggressive, coercive, and deceptive tone," the factor does weigh in favor of custody. *Id*. The case law consistently holds that a defendant is not in custody when officers tell him that he is not under arrest and is free to leave at any time. *Bassignani*, 575 F.3d at 886. Here, the interrogation was not hostile and Pitcher participated actively. The

**Memorandum Decision & Order - 7**

officers told Pitcher that he was not in custody and free to leave at any time. This factor weighs strongly against a finding of custody.

Weighing all the factors together, the Court finds that although the interrogation was long, and Pitcher was advised that he was a focus of the investigation, the manner in which the interrogation was handled warrants a finding that Pitcher was not in custody. Pitcher was invited, not ordered, to answer questions, and he did so freely, in a session that was marked by his active participation and the absence of any hostility or confrontation by the officers.

The Court therefore finds that Pitcher was not in custody during his questioning on April 29, 2010, and thus not entitled to *Miranda* warnings.

**Due Process Analysis**

Even if not in custody, and not entitled to a *Miranda* warning, Pitcher is entitled to suppression of his statements if they were not given voluntarily. In determining the voluntariness of a confession, a court "examines whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." *Dickerson v. U.S.*, 530 U.S. 428, 434 (2000). The due process test takes into consideration the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation. *Id.* It is not sufficient for a court to consider the circumstances in isolation. Instead, "all the circumstances attendant upon the confession must be taken into account." *Reck v. Pate*, 367 U.S. 433, 440 (1961).

As the Supreme Court has observed, "[t]he application of these principles involves close scrutiny of the facts of individual cases." *Gallegos v. Colorado*, 370 U.S. 49, 52 (1962). "The length of the questioning, the use of fear to break a suspect, [and] the youth of the accused are

illustrative of the circumstances on which cases of this kind turn." *Id*. (citations omitted). The ultimate issue is this:

> Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).

Given the factual findings above, the Court cannot find that Pitcher's will was overborne. The Court finds instead that Pitcher's statements were voluntary.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to suppress (docket no. 344) is DENIED.

DATED: **January 18, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge